**Jon M. Egan**, OSB 002467
Jegan@eganlegalteam.com
Jon M. Egan, PC
547 Fifth Street
Lake Oswego, OR 97034-3009
Tel: (503) 697-3427
Fax: (866) 311-5629
Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **OLIVER COFFEY**, <br><br> Plaintiff, <br><br> vs. <br><br> **MITSUYOSHI INOHARA** and **ICHIRO MACHIDA**, individuals, and **MARINEPOLIS U.S.A., INC.**, a Delaware corporation, <br><br> Defendants. | Case No. 3:20-cv-00643-JR <br><br> Joint Motion for Preliminary Class and Collective Settlement Approval |

Counsel for the parties have conferred regarding the subject of this motion and have

agreed to jointly submit this motion.

**MOTION**

The parties to this action jointly move for an Order:

1. Certifying for settlement purposes the class of "all current and former

    MARINEPOLIS [1] employees who received a paycheck for work performed at the

    Pearl District Sushiland location in Oregon on or after December 13, 2016 who do

---

[1] As in the attached settlement agreement, the term "MARINEPOLIS" is used herein to indicate all of the defendants, and each of them.

**Joint motion for class/collective action settlement approval**                    Page 1

not file a timely request to opt-out of the Class," including approving named plaintiff Oliver Coffey as the class representative;

2. Preliminarily certifying an FLSA collective of "all current and former MARINEPOLIS employees who received a paycheck for tip-eligible work performed at the Pearl District Sushiland location in Oregon on or after December 13, 2016 who file a timely opt-in to the Collective";

3. Approving Jon M. Egan, PC as class/collective counsel;

4. Preliminarily approving the settlement agreement (attached hereto) as fair, reasonable, and adequate;

5. Appointing Jon M. Egan, PC as the class administrator;

6. Approving the notice attached as Exhibit C to the settlement agreement as the form of notice to be mailed to each class/collective member;

7. Authorizing a 60-day period for putative class/collective members to opt out, object, or file opt-ins; and

8. Setting a date for hearing objections, if any, to the proposed settlement, as well as the proposed attorney fee award, costs, and proposed service payment to the class representative.

This motion is supported by the Declaration of Jon M. Egan submitted herewith.

## A. Rule 23 Class Certification

The parties jointly move to certify the Rule 23 settlement class, *i.e.*, "all current and former MARINEPOLIS employees who received a paycheck for work performed at the Pearl District Sushiland location in Oregon on or after December 13, 2016 who do not file a timely request to opt-out of the Class." Rule 23(a) restricts class actions to cases where:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of

the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). These requirements are more commonly referred to as numerosity, commonality, typicality, and adequacy of representation, respectively. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.1998).

While courts have not established a precise threshold for determining numerosity, *Gen. Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 330, 100 S. Ct. 1698, 64 L.Ed.2d 319 (1980), a class consisting of at least 40 members will generally be sufficiently numerous based on that number alone. *Rannis v. Recchia*, 380 Fed. Appx. 646, 651 (9th Cir. 2010) ("In general, [federal] courts find the numerosity requirement satisfied when a class includes at least 40 members."). This class is adequately numerous: 68 employees have been identified who, like the named plaintiff, had potential FICA overdeductions taken from their pay; and 42 of those employees were, like the named plaintiff, tipped employees with tip-theft claims.

Rule 23(a) also requires that "questions of law or fact [be] common to the class." Fed.R.Civ.P. 23(a)(2). Because "[t]he Ninth Circuit construes commonality liberally," "it is not necessary that *all* questions of law and fact be common." *West v. Circle K Stores, Inc.*, CIV-S-04-0438-WBS-GGH, 2006 WL 1652598, *3 (E.D. Cal. June 13, 2006). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). This case includes common issues such as:

1.  whether the Class/Collective Members' FICA overdeduction claims are viable given the parties' competing interpretations of certain statutes and regulations;

2.  whether and to what extent an employer exercising authority to collect tips and distribute them according to its own discretion constitutes conversion or other

**Joint motion for class/collective action settlement approval**          Page 3

legally actionable taking;

3.  whether the Class/Collective Members have claims in common;

4.  whether the Class Representative has claims that are typical of those of the putative Class/Collective Members;

5.  whether common questions of fact and law predominate over individualized inquiries;

6.  whether the Class Representative or any of the putative Class/Collective Members have interests that are antagonistic to one another;

7.  whether MARINEPOLIS has other defenses to the application of wage and hour or common laws;

8.  whether any class or collective action would ultimately be certified for trial;

9.  whether MARINEPOLIS's actions were willful;

10. the computation of the amount of alleged damages; and

11. whether attorney fees are to be awarded to the Class Representative and the putative Class/Collective Members if they prevail;

Rule 23(a) further requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Typicality requires that named plaintiffs have claims "reasonably coextensive with those of absent class members," but their claims do not have to be "substantially identical." *Hanlon*, 150 F.3d at 1020. The test for typicality " 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.' " *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992) (citation omitted). Here, the named plaintiff has exactly the same type of alleged violation as the 68 other class members and the 42 tipped class members.

**Joint motion for class/collective action settlement approval**        Page 4

Finally, Rule 23(a) requires "representative parties [who] will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). To resolve the question of legal adequacy, the court must answer two questions: (1) do the named plaintiff and his counsel have any conflicts of interest with other class members and (2) has the named plaintiff and his counsel vigorously prosecuted the action on behalf of the class? *Hanlon*, 150 F.3d at 1020. This adequacy inquiry considers a number of factors, including "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir.1992). Here, there are no conflicts between plaintiff or his counsel and the class; plaintiff has faithfully represented the putative class members since the outset of this litigation; and his counsel is experienced in both wage-and-hour law and class and collective actions. See the Declaration of Jon M. Egan submitted herewith.

Because Rule 23(a)(3) already considers commonality, the focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues. *Hanlon*, 150 F.3d at 1022; *see also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231 (1997) ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation"). Here, a common nucleus of facts and potential legal remedies clearly dominates this litigation. To the extent that any further individual issues may exist, there is no indication that such issues would be anything more than "local variants of a generally homogenous collection of causes" that derive from the named plaintiff's allegations. *Hanlon*, 150 F.3d at 1022. Such idiosyncratic differences, therefore, "are not sufficiently substantive to predominate over the shared claims." *Id.* at 1022–23.

In addition to the predominance requirement, Rule 23(b)(3) provides a non-exhaustive

list of matters pertinent to the court's determination that the class action device is superior

to other methods of adjudication. Fed.R.Civ.P. 23(b)(3)(A)-(D). These matters include:

> (A) the interest of members of the class in individually controlling the
> prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already
> commenced by or against members of the class;
> (C) the desirability or undesirability of concentrating the litigation of the
> claims in the particular forum; and
> (D) the difficulties likely to be encountered in the management of a class
> action.

*Id.* Some of these factors, namely (D) and perhaps (C), are irrelevant if the parties have

agreed to a pre-certification settlement. *Amchem*, 521 U.S. at 620, 117 S.Ct. 2231. The

parties are unaware of any concurrent litigation regarding the issues of the instant case. In

the absence of competing lawsuits, it is also unlikely that other individuals have an interest

in controlling the prosecution of this action or other actions.

## B. Preliminary FLSA Collective Certification

The parties jointly move to approve the FLSA settlement collective, *i.e.*, "all current and

former MARINEPOLIS employees who received a paycheck for tip-eligible work

performed at the Pearl District Sushiland location in Oregon on or after December 13, 2016

who file a timely opt-in to the Collective."

The FLSA requires employers to pay minimum wage and overtime at the rate of one

and one-half times their regular pay rate for hours worked over forty hours in a week, and

it prohibits tip theft by management. 29 U.S.C. §§ 203(m)(2)(B), 206, 207. The statute

provides that an aggrieved employee may bring a collective action on behalf of himself and

other employees "similarly situated" based on an employer's failure to adequately pay

overtime wages. 29 U.S.C. 216(b). The FLSA limits participation in a collective action to

only those parties that "opt-in" to the suit. *See Id.* ("No employee shall be a party plaintiff

to any such action unless he gives his consent in writing to become such a party and such

consent is filed in the court in which such action is brought"); *see also Wright v. Linkus Enterprises*, 259 F.R.D. 468, 475 (E.D.Cal.2009). To maintain a collective action under the FLSA, a plaintiff must demonstrate that the putative collective action members are similarly situated. *Id.; Adams v. Inter–Con Sec. Sys.*, 242 F.R.D. 530, 535–36 (N.D.Cal.2007); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D.Cal.2004).

Plaintiff has made "substantial allegations that the putative class members were subject to a single illegal policy, plan or decision." *Leuthold*, 224 F.R.D. at 468. Specifically, plaintiff alleges that MARINEPOLIS violated Oregon and federal wage and hour statutes and common law by allegedly (a) failing to pay the putative Class/Collective Members' wages when such wages were due, (b) overdeducting FICA tax assessments from employee wages, and (c) tip theft. Plaintiff's collective action under the FLSA is therefore appropriate for conditional certification.

### C. The Proposed Settlement

The parties have agreed to a gross settlement figure of $75,000. Based on the information currently available at this stage of the litigation, this figure represents a substantial portion of, but less than all of, the potential damages available to the class and collective according to the facts alleged and plaintiff's counsel's calculations, including prejudgment interest through the date of the parties' settlement.

The settlement provides for plaintiff's counsel to petition the Court for a common-fund award of attorney fees and costs not to exceed 25% of the gross settlement figure (*i.e.*, $18,750). It also provides for the named plaintiff to petition the Court for a service payment not to exceed $5,000. And $5,000 has been provided for out-of-pocket costs and settlement administration expenses as identified in the parties' settlement agreement. The attorney fees, service payment, and settlement administration expenses will be paid by the class members in amounts proportionate to each one's recovery.

**Joint motion for class/collective action settlement approval**        Page 7

Under the settlement, each class member will receive a guaranteed payment (i.e., with no reversion to the defendants). The non-tipped class members will receive a total of $5,000 for their wrongful deduction claims. This works out to $192.31 each, which represents most of the $200 in wrongful deduction penalties they would be entitled to under O.R.S. § 652.615. The tipped class members will receive a total of $45,000. This works out to $1,071.43 each, which is a good-faith estimate of a reasonable amount of tips that may have gone to persons who would not have been entitled to them under the respective versions of the FLSA and its implementing regulations at the various times during the statute of limitations period. Under the settlement, each class member who does not opt out of the settlement will be mailed their full Guaranteed Payment; no claim process is required, and there will be no reversion to defendants.

In addition, the FLSA collective members who opt in will split an additional $25,000 among them. If they all file opt-ins, this will represent an additional $595.24 each; the fewer people who opt in, the more each opt-in will receive.

Any residual funds will be allocated to the Northwest Workers' Justice Project, an Oregon 501(c)(3) nonprofit organization dedicated to employee rights and education. The allocation of residual funds to a *cy pres* organization in the settlement would be otherwise unavailable at trial. The benefit to *cy pres* relief is that the residual funds will (indirectly) benefit the class through the ongoing work of Northwest Workers Justice Project, in a concrete and immediate way.

## D. Settlement Approval

Rule 23(e) provides, in part, that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." When a district court evaluates a class action settlement under Rule 23(e), the court must determine whether the settlement is fundamentally fair, reasonable, and adequate. *In re*

*Syncor ERISA Litigation*, 516 F.3d 1095, 1100 (9th Cir. 2008). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *Id.*; *see also* 2 MCLAUGHLIN ON CLASS ACTIONS § 6:4 (12th ed. 2015) ("In the context of reviewing a proposed class action settlement, the district court has a special duty to act as guardian for the interests of absent class members because they are not present but will be bound by the disposition of the case.").

The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "But where, as here, class counsel negotiates a settlement agreement before the class is even certified, courts 'must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations.' " *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)). "In such a case, settlement approval 'requires a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).' " *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

This action was filed on December 13, 2019. It involves allegations that MARINEPOLIS violated Oregon and federal wage and hour statutes and common law by allegedly (a) failing to pay the putative Class/Collective Members' wages when such wages were due, (b) overdeducting FICA tax assessments from employee wages, and (c) tip theft. After the parties briefed defendants' motion to dismiss, and after a Finding & Recommendation was issued, but before the motion was finally ruled on by an Article III judge, the parties determined to resolve the case voluntarily rather than engage in further motion practice, formal discovery, and trial preparation.

**Joint motion for class/collective action settlement approval**          Page 9

Under Rule 23(e) of the Federal Rules of Civil Procedure, "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Thus, to approve a class action settlement, a court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(3); *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012).

When the parties negotiate the settlement agreement before formal class certification, as in this case, the court should engage in "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)." *Id.* (quotation marks and citation omitted). This more "exacting review" is warranted "to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Lane*, 696 F.3d at 819.

The Ninth Circuit has recognized, however, that "[j]udicial review also takes place in the shadow of the reality that rejection of a settlement creates not only delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Thus, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)).

In evaluating the acceptability of a class settlement, courts evaluate all relevant factors, according to the needs of the particular case. These include, but are explicitly not limited to, (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the

trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *In re Bluetooth Headset Products Liab. Litig*., 654 F.3d 935, 946 (9th Cir.2011), citing *Churchill Vill., L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir.2004) and *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir.1993).

In addition, for class settlements reached before formal class certification, the Court must also review the proposed settlement for signs of collusion. *In re Bluetooth Headset Prod. Liab. Litig*., 654 F.3d 935, 947 (9th Cir. 2011). These could include:

(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;

(2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and

(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

None of those signs are present here.

The parties have evaluated and discussed several potential issues with the claims and defenses at issue in this case, how they might play out at trial, and possible methods to account for various strengths and weaknesses in the settlement value of the case. The factors considered in negotiating the settlement amount included potential legal questions regarding the availability or non-availability of multiple penalties; the relatively small amounts of many of the actual underlying violations; potential difficulty in establishing willfulness (a requirement for penalty wages); the additional time and expense that would

be required to take this case through trial; and, perhaps most importantly, the impact of the COVID-19 crisis on MARINEPOLIS's restaurants and the dwindling availability of a wasting insurance policy. After that analysis, the parties both believe that this is a fair and adequate settlement for both the class and collective members.

For the reasons set forth above, the parties jointly move for an Order pursuant to Fed.R.Civ.P. 23(e):

1. Certifying for settlement purposes the class of "all current and former MARINEPOLIS employees who received a paycheck for work performed at the Pearl District Sushiland location in Oregon on or after December 13, 2016 who do not file a timely request to opt-out of the Class," including approving named plaintiff Oliver Coffey as the class representative;

2. Preliminarily certifying an FLSA collective of "all current and former MARINEPOLIS employees who received a paycheck for tip-eligible work performed at the Pearl District Sushiland location in Oregon on or after December 13, 2016 who file a timely opt-in to the Collective";

3. Approving Jon M. Egan, PC as class/collective counsel;

4. Preliminarily approving the settlement agreement (attached hereto) as fair, reasonable, and adequate;

5. Appointing Jon M. Egan, PC as the class administrator;

6. Approving the notice attached as Exhibit C to the settlement agreement as the form of notice to be mailed to each class/collective member;

7. Authorizing a 60-day period for putative class/collective members to opt out, object, or file opt-ins; and

8. Setting a date for hearing objections, if any, to the proposed settlement, as well as

the proposed attorney fee award and proposed service payment to the class

representative.

Respectfully Submitted by:                JON M. EGAN, PC

                                          *s/ Jon M. Egan*

DATED: September 11, 2020        By _____

                                          Jon M. Egan, OSB No. 002467
                                          jegan@eganlegalteam.com
                                          Attorney for Plaintiff


                                          BARRAN LIEBMAN LLP

                                          *s/ Andrew M. Schpak*

DATED: September 11, 2020        By _____

                                          Andrew M. Schpak, OSB No. 044080
                                          ASchpak@barran.com
                                          Attorneys for Defendants

SETTLEMENT AND RELEASE AGREEMENT

between

OLIVER COFFEY, ON BEHALF OF HIMSELF AND AS CLASS/COLLECTIVE REPRESENTATIVE
ON BEHALF OF THE OTHER SIMILARLY SITUATED CLASS/COLLECTIVE MEMBERS,

and

MARINEPOLIS U.S.A., INC., MITSUYOSHI INOHARA, AND ICHIRO MACHIDA

Dated September 9, 2020

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement, dated September 9, 2020 (this "Settlement Agreement" or "Settlement"), is entered into by and between Marinepolis U.S.A., Inc., Mitsuyoshi Inohara, and Ichiro Machida (collectively, "MARINEPOLIS"), on the one hand, and Oliver Coffey (the "Class Representative"), on behalf of himself and on behalf of similarly situated putative class members (together with the Class Representative, the "Class Members") and putative collective members (together with the Class Representative, the "Collective Members"), on the other hand. MARINEPOLIS and the Class and Collective Members are collectively referred to herein as the "Parties," or, as to each, a "Party."

## RECITALS

**WHEREAS**, on December 13, 2019, the Class Representative filed with the Circuit Court of the State of Oregon for the County of Multnomah (the "Multnomah County Court") a class-action and collective-action complaint commencing an action against MARINEPOLIS, captioned *Oliver Coffey, v. Mitsuyoshi Inohara, Ichiro Machida, and Marinepolis U.S.A., Inc.,* Case No. 19CV53667, asserting that MARINEPOLIS violated Oregon and federal wage and hour statutes and common law by allegedly (a) failing to pay the putative Class/Collective Members' wages when such wages were due, (b) overdeducting FICA tax assessments from employee wages, and (c) tip theft;

**WHEREAS**, on April 20, 2020, the Multnomah County Court action was removed to the United States District Court for the District of Oregon ("Oregon District Court") and assigned case number 3:20-cv-00643-JR;

**WHEREAS**, on April 27, 2020, MARINEPOLIS filed a motion to dismiss for failure to state a claim, which plaintiff responded to on May 9, 2020, but which has not yet been ruled on by the Court;

**WHEREAS**, insurance funds are limited in this case;

**WHEREAS,** the COVID-19 pandemic has impacted MARINEPOLIS's business;

**WHEREAS**, there exist significant, complex legal and factual issues regarding the application of wage and hour laws, the various cases and regulations interpreting such laws, the application of common-law theories to these facts and their interaction with wage-and-hour laws, and regarding the viability of the Action against MARINEPOLIS, both individually and as a putative class and collective, including:

- whether the Class/Collective Members' minimum-wage claims are viable given the parties' competing interpretations of certain statutes and regulations;

- whether and to what extent an employer exercising authority to collect tips and distribute them according to its own discretion constitutes conversion or other legally actionable taking;

- whether the Class/Collective Members have claims in common;

- whether the Class Representative has claims that are typical of those of the putative Class/Collective Members;

- whether common questions of fact and law predominate over individualized inquiries;

- whether the Class Representative or any of the putative Class/Collective Members have

2

interests that are antagonistic to one another;

- whether MARINEPOLIS has other defenses to the application of wage and hour or common laws;

- whether any class or collective action would ultimately be certified for trial;

- whether MARINEPOLIS's actions were willful;

- the computation of the amount of alleged damages; and

- whether attorney fees are to be awarded to the Class Representative and the putative Class/Collective Members if they prevail;

**WHEREAS**, the Class Representative has the burden of proof on some of these issues and MARINEPOLIS has the burden on others, and the trial of this matter would likely be lengthy and complex, adding to the cost and potential delay;

**WHEREAS**, all Parties recognize that the outcome of the litigation with respect to all of the aforementioned issues is uncertain;

**WHEREAS**, to avoid extensive, costly, and uncertain litigation over these issues, after the Parties' good-faith, arm's-length negotiations regarding a possible consensual resolution of the Class and Collective Claims and any and all related or similar settleable claims, counterclaims and/or causes of action based on or arising out of any federal, state or local statute, ordinance or regulation, contract, tort, or otherwise between the Parties hereto (collectively sometimes referred to herein as the "Litigation"), the Parties desire to enter into a final settlement and release of all settleable demands, claims, damages and causes of action between one another arising from or relating to the Litigation, whether known or unknown; and

**WHEREAS**, the Parties have agreed to settle any and all claims between one another relating to or arising out of the Litigation in accordance with the terms of this Settlement;

**NOW, THEREFORE**, as material consideration and inducement to the execution of this Settlement Agreement, and in consideration of the mutual promises, agreements and cooperation set forth herein, and other good and valuable consideration, the sufficiency of which is hereby acknowledged and intended to be binding, the Parties hereby agree as follows:

## 1. **Motion and Hearings.**

Within five (5) business days of executing this Agreement, the Parties shall file consents to the jurisdiction of the Magistrate Judge in order to expedite consideration of this settlement. Thereafter, the Parties shall file a joint motion for approval of the Settlement through a bifurcated hearing process (the "Motion"). The Motion shall request an initial hearing (the "Initial Hearing") at which time the Parties shall seek entry of an order from the Court preliminarily certifying a Rule 23 class and a FLSA collective action, preliminarily approving the Settlement, approving the form and manner of notice to the Class/Collective Members of the Settlement, including, among other things, their right to object to the Settlement in person or appear by counsel, and approving the form of notice to the Collective Members and opt-in form. The Parties shall also request that the Court designate dates thereafter as deadlines for opting into the FLSA collective, opting out of the Rule 23 class, or objecting to the Settlement, as well as a date for a fairness hearing (the "Fairness Hearing"). At the Fairness Hearing, the Court will consider the final approval of the Settlement, including the award of Class Counsel's Fees and the Service Payment (each as defined below).

3

2. **Class and Collective Certification; Class Counsel; Class Representative.**

Upon execution of this Settlement Agreement, the Parties stipulate and agree to define and certify, in connection with the Litigation and the Motion, a Rule 23 class (the "Class"), comprised of all current and former MARINEPOLIS employees who received a paycheck for work performed at the Pearl District Sushiland location in Oregon on or after December 13, 2016 who do not file a timely request to opt-out of the Class, as well as an FLSA collective (the "Collective"), comprised of all current and former MARINEPOLIS employees who received a paycheck for tip-eligible work performed at the Pearl District Sushiland location in Oregon on or after December 13, 2016 who file a timely opt-in to the Collective; provided, however, that such class and collective shall be certified for settlement purposes only and without any admission on the part of MARINEPOLIS that class or collective certification is proper. In the event that this Settlement is not finally approved by the Court, the certification status of the class and collective returns to the *status quo ante* to the extent permitted by the Court, any remaining funds on deposit with Class Counsel shall be returned to MARINEPOLIS, and no additional class or collective action will be certified until the Class Representative moves for certification and the Court certifies a class and/or collective action.

3. **The Settlement Fund.**

A. Definition

The Claims shall be settled hereby and as provided herein. The Parties agree that MARINEPOLIS's liability will not exceed Seventy-Five Thousand Dollars ($75,000.00) (the "Settlement Fund"). This includes two categories of funds payable to the putative Class/Collective Members—$50,000.00 in Guaranteed Funds and $25,000.00 in FLSA Funds. The Settlement Fund represents the maximum amount that MARINEPOLIS will pay pursuant to this Settlement, inclusive of the allocation of the Settlement Fund to Class/Collective Members, Court-awarded Class Counsel's Fees, Court-awarded Service Payment, and settlement expenses. MARINEPOLIS shall not be called upon or required to contribute additional monies above the Settlement Fund under any circumstance whatsoever.

    i.   The Guaranteed Funds consist of $50,000.00 in guaranteed class recovery, representing two categories of funds that the respective class members shall receive, regardless of whether or not that Class Member submits an opt-in:

        a.   The first subcategory of Guaranteed Funds is the non-tipped employee funds (representing deduction penalties and interest), which totals $5,000.

        b.   The second subcategory of Guaranteed Funds is the tipped employee funds (representing unpaid tips, noneconomic damages, interest, and punitive damages), which totals $45,000.

   ii.   The FLSA Funds consist of $25,000.00 in additional funds available to tip-eligible class and collective members who file an opt-in form (representing liquidated damages)

  iii.   The Settlement Fund allows for up to $18,750.00, in attorneys' fees, as discussed below in Section 5.

   iv.   The Settlement fund also allows for up to $5,000 in present and future costs (including for preparing and mailing all required notices, settlement checks, and 1099s).

    v.   The Settlement Fund also allows for up to $5,000.00 in a Service Payment to the Class Representative, as discussed below in Section 8.

B. <u>Payments</u>

    i.    Within fifteen (15) days of the Court's preliminary approval of this settlement, MARINEPOLIS shall deliver a check for the Guaranteed and FLSA Funds portions of the settlement ($75,000) to Class Counsel, to be deposited into a segregated, non-interest-bearing trust account to be opened and maintained by Class Counsel, pending resolution of the Action.

C. <u>Disbursement</u>

Within thirty (30) days of the Effective Date, as defined herein, the Guaranteed Funds, the FLSA Funds, any Class Counsel's Fees awarded by the Court, any past or future Costs awarded by the Court, and any Service Payment awarded by the Court will be disbursed pursuant to the terms herein.

## 4.  **Responsibilities of Class Counsel.**

In addition to calculating the individualized amounts of the Settlement Fund to be distributed to Class/Collective Members in accordance with the terms of this Agreement, Class Counsel will produce and mail all notices to be required for the Class/Collective Members (the "Class Notices"), receive and process the Class/Collective Members' opt-outs, objections, and opt-ins, and prepare and distribute the settlement checks and IRS Form 1099-MISC ("1099 Forms"). The address of Class Counsel will be used as the return address for the Class Notices. Class Counsel will submit a declaration in support of Final Approval of this Settlement identifying these efforts in administering this settlement, including attaching copies of all of the opt-ins received.

## 5.  **Class Counsel's Fees and Expenses.**

Class Counsel may move the Court for an attorney fee award of no more than $18,750.00, representing twenty-five percent of the Settlement Fund ("Class Counsel's Fees"). MARINEPOLIS agrees not to oppose Class Counsel's request for this amount of Class Counsel's Fees. This one quarter (1/4) figure is used for ease of calculation purposes and does not represent a contingent-fee recovery; instead, the one quarter (1/4) figure is awarded in lieu of the lodestar and/or other statutory fee-shifting attorney fees to which Class Counsel asserts he would otherwise be entitled under a successful resolution of the underlying claims against MARINEPOLIS via litigation. Any Class Counsel's Fees awarded will be distributed contemporaneously with the distribution of the Settlement Fund payments. In the event that the Court orders a Class Counsel's Fees award of less than the requested amount, that occurrence shall have no bearing on the validity or enforceability of this Settlement Agreement. $5,000 for the cost of administering the settlement, printing and distributing notices, settlement distributions, and 1099s will be paid by Class Counsel out of MARINEPOLIS's $75,000.00 payment and shared out among the class/collective members in proportion to each class/collective member's recovery. All other expenses related to this litigation are subsumed into Class Counsel's Fees.

## 6.  **The Allocation of the Settlement Fund and Disbursement of the Settlement Fund Payments to Class/Collective Members.**

A. <u>Allocation of the Net Settlement Fund.</u>

The net Settlement Fund shall be the remains of the Settlement Fund after being first reduced by any award of Class Counsel's Fees, Costs, and/or Service Payment. They shall be allocated to the individual Class/Collective Members as calculated by Class Counsel in accordance with the terms of this Agreement. The method used to calculate the Settlement Fund payment due to each

Class/Collective Member is described in detail in Exhibit B.

B. Returned Notices

In the event that any settlement notice is returned as undeliverable, Class Counsel shall promptly re-mail the returned item to the corrected address of the intended recipient as determined by postal forwarding address or through a search of a national database, if any. If a corrected address cannot be obtained for the intended recipient, or in the case of two returns attributable to any Class/Collective Member, the disbursement of the Guaranteed Funds due to that Class/Collective Member will be deemed Residual Funds and treated in accordance with Section 6D below.

C. Returned Settlement Checks

In the event that any settlement fund disbursement is returned as undeliverable, Class Counsel shall promptly re-mail the returned item to the corrected address of the intended recipient as determined by postal forwarding address or through a search of a national database, if any. If a corrected address cannot be obtained for the intended recipient, or in the case of two returns attributable to any Class/Collective Member, the disbursement due to that Class/Collective Member will be deemed to be Residual Funds and treated in accordance with Section 6D below.

D. Residual Funds.

In the event that there are any Settlement Funds remaining for any reason, including returned notices/settlement checks, Guaranteed Funds attributable to any opt-out Class member, and settlement checks which are not deposited or negotiated within sixty days of their date of issuance (the "Residual Funds"), such Residual Funds will be donated to the Northwest Workers Justice Project, a local 501(c)(3) non-profit organization dedicated to employee education and rights, as a *cy pres* distribution. No portion of the Residual Funds shall revert to MARINEPOLIS for any reason or be disbursed to Class Counsel.

**7. Notification of Possible Tax Consequences to Class/Collective Members.**

The ultimate amounts of the net Settlement Fund payments allocated to each Class/Collective Member are aggregate figures resulting from and reflecting the Parties' good-faith negotiations regarding a number of unliquidated (and in some cases unknowable) categories of potential damages. However, due to the nature of the violations at issue, NONE of the funds due to each Class/Collective Member would be due to any actual unpaid back wages. Instead, the payments include provision for prejudgment interest, penalty wages, liquidated damages, non-economic damages, and any and all other categories of potential recovery resulting from the Litigation. As such, and due to the inability to fix the relative amounts of such damage categories without further litigation, Class Counsel will issue IRS Form 1099s to Class/Collective Members, with the net amount of their Settlement Fund payments designated as "Other Income" in Box 3 of such forms—no tax withholdings from such funds will be made by either MARINEPOLIS or Class Counsel. Class Counsel will also provide each Class/Collective Member with a notice advising each Class/Collective Member to seek his or her own personal tax advice regarding the potential tax consequences of the net Settlement Fund payment and an explanation of the deduction of Class Counsel's fees and accrued expenses. This notice will be included with each net Settlement Fund payment to the Class/Collective Members. No Party makes any representation to any other Party as to the possible tax treatment of any payment hereunder.

In the event that it is subsequently determined by the United States Internal Revenue Service or any other appropriate taxing authority (each a "Taxing Authority") that any Party owes any

additional taxes with respect to any money distributed under this Settlement, it is agreed that the determination of any tax liability shall be between such Party and the Taxing Authority, and that no other Party shall be responsible for the payment of such taxes, including any interest and penalties.

## 8. <u>Service Payment to Class Representative.</u>

As described in Exhibit B, the Class Representative shall petition the Court for an additional $5,000 for his service in this matter, the time and effort he has contributed to the case, his participation in discovery, the financial risks he undertook by asserting statutory claims on behalf of the Class/Collective Members, and his complete and total waiver of all claims against MARINEPOLIS. MARINEPOLIS agrees not to oppose this request. In the event that the Court ultimately awards a lesser amount, this Settlement Agreement shall remain valid and enforceable.

## 9. <u>Released Claims of Class and Collective Members.</u>

For the purposes of this Settlement, the term released claims ("Released Claims") shall include the Released Rule 23 Claims and the Released FLSA Claims.

(i)     The Released Rule 23 Claims include any and all claims, counterclaims and/or causes of action of any kind or nature that have been alleged, or that have a similar factual predicate to the claims alleged by the Class Representative against the Released Parties (as defined below) in the Litigation, whether presently known or unknown, fixed or not, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, matured or unmatured, disputed or undisputed, legal or equitable, including, but not limited to, any claims and/or causes of action under, pursuant to or derived from (i) any statute regulating hours of work, wages, the payment of wages and/or the payment of overtime compensation; (ii) any contract; (iii) common law, including, but not limited to, claims for unjust enrichment and quantum meruit; and (iv) The Employee Retirement Income Security Act of 1974 ("ERISA") including, but not limited to, claims for benefits under any benefit plans subject to ERISA that arise from any act or omission that has been alleged or based upon a similar factual predicate to the claims alleged in the Litigation, and explicitly excluding any claims under the federal Fair Labor Standards Act; provided, however, that nothing contained herein shall be deemed to waive or release any claims which are allowed pursuant to this Settlement or any of the Parties' rights or obligations under this Settlement. On the day of final approval of this settlement, the Released Rule 23 Claims shall be deemed released as to all Class Members who did not timely opt out.

(ii)    The Released FLSA claims include any and all claims, counterclaims and/or causes of action under the federal Fair Labor Standards Act that have been alleged, or that have a similar factual predicate to the FLSA claims alleged by the Class Representative against the Released Parties (as defined below) in the Litigation whether presently known or unknown, fixed or not, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, matured or unmatured, disputed or undisputed, legal or equitable. The Released Claims shall be released and forever fully discharged as to MARINEPOLIS, and all of their present and former parents, divisions, subsidiaries, affiliates, predecessors, successors and assigns, and their present and former directors, officers, employees, principals, investors, agents, insurers, shareholders, owners, attorneys, advisors, consultants, representatives, partners, joint ventures, independent contractors and vendors (collectively, the "Released Parties"). On the day of final approval of this settlement, the Released FLSA Claims shall be deemed released as to all Collective

Members who timely submitted an opt-in form.

**10.   Reservation of Rights.**

MARINEPOLIS expressly reserves the right to object to, offset, or oppose any and all claims, obligations or causes of action, of any type, except those expressly allowed under this Settlement.

**11. The Class/Collective Notice.**

As noted above, Class Counsel shall prepare and distribute the Settlement Notices, with the cost of such distribution to be paid from the payment to Class Counsel by MARINEPOLIS. Within fifteen (15) days of preliminary approval of this settlement, MARINEPOLIS shall deliver to Class Counsel the name, employee number, date of birth, social security number, last known mailing address, email address, and telephone number for each Class/Collective Member. Class Counsel's address will be used as the return address for the Settlement Notices so that any returned Settlement Notices will be returned to Class Counsel. Class Counsel shall mail the Settlement Notices by first-class mail to the Class/Collective Members at the addresses provided by MARINEPOLIS, at the date ordered by the Court, following the entry of an order by the Court preliminarily approving this Settlement. The Settlement Notice shall be in the form annexed hereto as Exhibit C or such substantially similar form as may be approved by the Court. In the event that a Settlement Notice is returned as undeliverable, Class Counsel shall re-mail the Settlement Notice to the corrected address of the intended Class/Collective Member recipient as determined by Class Counsel through postal forwarding or a search of a national database, if any. In the event that any re-mailed Settlement Notice is returned as undeliverable, the portion of the Guaranteed Funds otherwise allocable to that Class/Collective Member shall be deemed Residual Funds and treated in accordance with Section 6D above.

A. Contents of the Settlement Notice.

The Settlement Notice shall contain the following information, which shall be individualized for each Class/Collective Member, as appropriate:

- that the Settlement shall become effective only if it is finally approved by the Court;

- that, if so approved, the Settlement shall be effective as to all Collective Members who opt into the collective (for FLSA claims) and all Class Members who did not timely elect to opt out of the Class (for Rule 23 claims);

- the portion of the settlement funds allocable to that Class member;

- the proposed Class Counsel's Fees, costs, and Class Representative's Service Payment;

- that such Class Member has the right to object to the Settlement either in person or through counsel and be heard at the Fairness Hearing;

- that such Class Member has the right to opt out of the Settlement without waiving his or her claims against MARINEPOLIS;

- that upon Final Approval, all Released Claims (other than those claims to be paid under the terms of this Settlement) shall be waived as to all Class Members for Released Rule 23 Claims and as to all opt-in Collective Members for Released FLSA Claims, and that no person, including the Class/Collective Member, shall be entitled to any further distribution thereon; and

- that in order to claim the FLSA Funds portion of the Settlement, the Collective Member must make an opt-in by following the procedures laid out in Section 12 below.

## 12. Opt-In Process.

Each Class Member will receive his or her portion of the Guaranteed Funds, irrespective of whether that Class Member submits an opt-in. To make an opt-in for the Collective Member's portion of the FLSA Funds, the Collective Member must submit an opt-in to Class Counsel via US mail, fax, or email, including verifying his or her identity by: (1) indicating their name, year of birth, and last four digits of his or her social security number on the Opt-In Form; (2) and physically or electronically signing the Opt-In Form. Copies of the class/collective notice, and proposed Opt-In Form are attached hereto as Exhibit C. The Collective Members will have 60 calendar days from the date of initial sending of the class notice to make an opt-in for the Collective Member's share of the FLSA Funds. Upon receipt of the Opt-In Forms, Class Counsel will confirm that the name, year of birth, and last four digits of the Collective Member's social security number listed on the form match the information contained in MARINEPOLIS's payroll records. Each person submitting a fully executed Opt-In Form shall be deemed a Qualified Claimant. Within thirty days of the Effective Date, Class Counsel shall mail each Class/Collective Member a check including (a) his or her share of the Guaranteed Funds, and (b) for Collective Members who are also Qualified Claimants, his or her share of the FLSA Funds. Collective Members who fail to become Qualified Claimants will not receive any portion of the FLSA Funds. The Class Representative is hereby deemed to have already submitted an opt-in and shall be considered a Qualifying Claimant for all purposes under this Settlement Agreement.

## 13. Objection to Settlement Procedures.

At or before such time as may be fixed by the Court, a Class Member may object to this Settlement by delivering timely written notice of such objection (a "Notice of Objection") to Class Counsel and filing such Notice of Objection with the Court. The Notice of Objection shall clearly specify the basis for such objection, the relief sought and the grounds for such relief. Any Class Member who chooses to object to the Settlement Agreement may not opt out of the Settlement.

## 14. Opt Out Procedures

At or before such time as may be fixed by the Court, a Class Member may opt out of this Settlement by delivering timely written notice of such option to Class Counsel via mail, email, or fax. The notice of a Class Member's request to opt out of this Settlement must be dated, include the Class Member's full name, conventional or electronic signature, and state "I wish to opt out of the *Coffey v. MARINEPOLIS* settlement." Any Class Member who opts out of this Settlement retains his or her rights to assert claims against MARINEPOLIS. Class Counsel shall provide a report on the number of any individuals who opt out of this Settlement to counsel for MARINEPOLIS within 7 days of request. Class Counsel agrees to retain the opt out forms submitted for three years following the Effective Date.

## 15. Acceptance and Effectiveness of the Settlement.

A. Court Approval.

The effectiveness of this Settlement shall be subject to and contingent upon the entry of an order of the Court at the Fairness Hearing approving this Settlement and upon such order having become final and non-appealable (the date of such order becoming final and non-appealable, the "Final Approval Date"); provided, however, in the event that the Court or a court with competent

jurisdiction determines that the Service Payment and/or Class Counsel's Fee and cost provisions are unreasonable, the Parties shall amend such Service Payment and/or Class Counsel's Fee and cost provisions so as to render the same reasonable to such court without modifying the liquidated amount of the Claims set forth in Section 3A.

    B. <u>Effective Date.</u>

The Effective Date of this Settlement is the Final Approval Date.

## 16. <u>The Waiver and Release of any Released Claims by All Class/Collective Members if the Settlement Becomes Effective.</u>

    A. <u>Class Representative</u>

Upon the Final Approval Date, the Class Representative and his respective predecessors, successors, and assigns (collectively, the "Class Representative Releasing Parties"), shall be deemed to have settled, released, and extinguished completely any and all claims that they have, had, might have or might have had against the Released Parties, including all Released Claims and any and all other common-law, statutory, equitable or other claims, whether or not such claims are or were based upon an identical factual predicate to the claims alleged in the Litigation.

    B. <u>Class Members</u>

Upon the Final Approval Date, all other Class Members who did not timely opt out of this case, and their respective predecessors, successors and assigns (the "Class Member Releasing Parties") shall be deemed to have settled, released and extinguished completely any and all Released Rule 23 Claims that they have, had, might have or might have had against the Released Parties.

    C. <u>Collective Members</u>

Upon the Final Approval Date, all Collective Members who timely opt into this case, and their respective predecessors, successors and assigns (the "Collective Member Releasing Parties") shall be deemed to have settled, released and extinguished completely any and all Released FLSA Claims that they have, had, might have or might have had against the Released Parties.

## 17.    <u>Termination of Settlement Agreement.</u>

If more than fifty (50) Class Members request exclusion from the Settlement Class, then MARINEPOLIS may, in its sole discretion, notify Class Counsel in writing that it has elected to terminate this Settlement Agreement, effective upon the giving of such notification. In order to be effective, such notification must be provided within 14 days of being informed in writing that more than fifty (50) Class Members have requested exclusion. In the event that this Settlement Agreement and the Settlement are terminated under this provision, the Parties and the Action will be returned to the *status quo ante*, all remaining funds on deposit with Class Counsel shall be returned to MARINEPOLIS, and this Settlement Agreement shall be null and void.

## 18. <u>No Litigation.</u>

Except as may be necessary to enforce the terms of this Settlement, each of the Class Representative Releasing Parties, the Class Member Releasing Parties, the Collective Member Releasing Parties, and MARINEPOLIS agrees that she/he/it shall not commence or proceed with any action, claim, suit, proceeding, or litigation against any other Party, directly or indirectly, regarding or relating to the matters described herein, or take any action inconsistent with the terms of the Settlement.

19. **No Admission of Liability or Non-Liability.**

This Settlement is intended to settle and dispose of the Released Claims. Nothing herein shall be construed as an admission by any Party of any facts or liability or non-liability of any kind.

20. **Representations and Warranties.**

Each Party represents and warrants that upon Court approval of this Settlement it will have the legal right and authority to enter into this Settlement and the transactions and releases contemplated hereby.

21. **Miscellaneous.**

A. Jurisdiction.

The United States District Court for the District of Oregon shall have exclusive jurisdiction over this Settlement and continuing jurisdiction over any dispute or controversy arising from or related to the interpretation or enforcement of this Settlement.

B. Notices.

Except as otherwise specifically provided herein, any notice or other communication required or permitted to be delivered by any Party to any other Party under this Settlement shall be (i) in writing, (ii) delivered personally, by courier service, by certified or registered mail, first-class postage prepaid and return receipt requested, or by email if such email is not returned as undeliverable, (iii) deemed to have been received on the date of delivery, and (iv) addressed as follows (or to such other address as the Party entitled to notice shall hereafter designate by a written notice delivered to the other Party):

If to MARINEPOLIS, to:

BARRAN LIEBMAN LLP
601 S.W. Second Avenue, Suite 2300
Portland, Oregon  97204
Attention: Andrew Schpak
Email: ASchpak@barran.com

If to Class/Collective Members or Class Counsel, to:

Jon M. Egan, PC
547 Fifth Street
Lake Oswego, OR 97034-3009
Attention: Jon M. Egan, Esq.
Email: jegan@eganlegalteam.com

C. Amendments.

This Settlement may not be modified, altered, amended or supplemented by the Parties except by a written instrument that the Parties have signed with any required approval of the Court.

D. Integration.

The provisions contained in this Settlement constitute the entire agreement between the Parties

IN WITNESS WHEREOF, the Parties have executed and delivered this Settlement as of the date first written above.

BARRAN LIEBMAN LLP
on behalf of MARINEPOLIS

By:_____
    Andrew Schpak, Esq.
    Attorney for MARINEPOLIS


JON M. EGAN, PC
on behalf of the Class Representative and
Class/Collective Members

By:_____
    Jon M. Egan, Esq.
    Class Counsel

## EXHIBIT A

## CONTACT INFORMATION AND TIP-ELIGIBLE/NON-TIP-ELIGIBLE STATUS
## OF EACH CLASS/COLLECTIVE MEMBER

## [REDACTED]

**EXHIBIT B**

**Method Used to Calculate Settlement Fund Payments Due to Class/Collective Members**

Class Counsel shall calculate the portion of the aggregate net Settlement Fund that will be distributed to each Class/Collective Member on an individualized basis in the following manner. The net Settlement Fund (after first being reduced on account of Class Counsel's Fees, accrued and reasonably anticipated costs as provided in the Agreement, and the Service Payment) will be allocated to each Class/Collective Member according to the following formula:

A portion of the net Settlement Fund will be distributed to each Class/Collective Member equal to:

(a) The Guaranteed Funds allocable to that Class Member, calculated as the total net Guaranteed Funds divided by the number of Class Members employed over the statute of limitations period;

<u>plus</u>

(b) If the Collective Member was tip-eligible and submits an opt-in, the net FLSA funds allocable to that Collective Member, calculated as the total net FLSA funds divided by the number of Collective Members opting in;

For his service in this matter, the time and effort he has contributed to the case, his participation in discovery, and the financial risks he undertook by asserting statutory claims on behalf of the Class/Collective Members, the Class Representative shall receive a Service Payment of $5,000 (or, if different, the amount awarded by the Court) in addition to his share of the net Settlement Fund.

**EXHIBIT C**

**PROPOSED FORM OF CLASS/COLLECTIVE NOTICE**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| OLIVER COFFEY,<br><br><div align="center">Plaintiff,</div><br>v.<br><br>MARINEPOLIS U.S.A., INC., MITSUYOSHI INOHARA, AND ICHIRO MACHIDA,<br><br><div align="center">Defendants.</div> | Case Nos. 3:20-cv-00643-JR<br><br>SETTLEMENT NOTICE<br><br>Objection Deadline: _____, 2020 by 4:00 p.m. (PT)<br>Opt Out Deadline: _____, 2020 by 4:00 p.m. (PT)<br>Opt In Deadline: _____, 2020 by 4:00 p.m. (PT)<br>Hearing Date: _____, 2020 at _____ p.m. (PT) |

NOTICE TO CLASS OF (I) PROPOSED SETTLEMENT OF CLASS/COLLECTIVE ACTION CONCERNING STATE AND FEDERAL WAGE-AND-HOUR AND COMMON-LAW CLAIMS; (II) AWARD OF ATTORNEY FEES AND EXPENSES TO CLASS COUNSEL AND SERVICE PAYMENT TO CLASS REPRESENTATIVE; (III) DATE OF COURT HEARING FOR FINAL APPROVAL OF PROPOSED SETTLEMENT AND AWARD OF ATTORNEY FEES AND EXPENSES AND SERVICE PAYMENT, (IV) RIGHT TO OPT-OUT, OPT-IN, OR OBJECT TO THE SETTLEMENT AND CLASS COUNSEL'S REQUEST FOR ATTORNEY FEES AND EXPENSES AND COSTS AND SERVICE PAYMENT AND TO APPEAR AT COURT HEARING, AND (V) **REQUIREMENT TO MAKE OPT-IN IN ORDER TO RECEIVE ADDITIONAL SHARE OF SETTLEMENT PAYMENT**

TO: All current and former employees of the Pearl District Sushiland operated by Marinepolis U.S.A., Inc. who received a paycheck for work performed in Oregon on or after December 13, 2016 (the "Class/Collective" or "Class/Collective Members").

<div align="center">**Introduction**</div>

1.   There is currently pending in the United States District Court for the District of Oregon (the "Court") the above-captioned consolidated action brought under state and federal wage and hour and common laws (the "Action"). The plaintiff, Oliver Coffey (the "Class Representative") and defendants Marinepolis U.S.A., Inc., Mitsuyoshi Inohara, and Ichiro Machida (collectively, "MARINEPOLIS" and together with the Class Representative, the "Parties"), have reached a proposed settlement to resolve the Class Litigation between them, memorialized in a Settlement and Release Agreement (the "Settlement"), under which the benefits described below will be provided to the members of the Class/Collective.

2.   This notice constitutes notice to the Class/Collective of (a) the proposed Settlement of the Action, (b) the request of Class Counsel (defined below) for the award of attorney fees of one-quarter (1/4) of the gross Settlement Fund, costs of $5,000, and a service payment to the Class Representative of $5,000, (c) the date of the Court hearing for final approval of the proposed Settlement and award of Class Counsel's attorney fees and costs and the service payment, (d) the right of each member of the Class/Collective to opt-out, object to or comment on the Settlement and Class Counsel's request for attorney fees and costs and service payment and to appear at the hearing at which the Court will consider the final approval of the Settlement and Class Counsel's request for attorney fees and costs and the service payment, and the required procedures for doing so, and (e) the requirement that Class/Collective Members submit an opt-in in order to receive a share of the FLSA Funds. If you stay in the class and opt in to the collective, you will be legally bound by all class/collective orders and judgments, lose the ability to sue (or continue to sue) MARINEPOLIS, receive your share of the Guaranteed Funds, and (if you submit an opt-in) receive your share of the FLSA Funds. **If you wish to receive a share of the FLSA Funds, you will have to submit an opt-in, as described below in How to Submit an Opt-In**. If you opt out of the class and do not opt into the collective, you will not receive any money or benefits awarded to the class/collective, but you will not be bound by the class/collective orders or judgments, and you will retain the ability to sue (or continue to sue) MARINEPOLIS. If you object to the settlement, the Court will consider your objections, but you will remain a Class Member and be bound by the class orders or judgments.

<div align="center">**Description of the Class Litigation**</div>

3.   On December 13, 2019, the Class Representative filed this Action, on behalf of himself and purportedly on behalf of the putative Class/Collective Members, asserting that MARINEPOLIS violated wage and hour and common laws by allegedly (a) failing to pay the putative Class/Collective Members' wages when such wages were due, (b) overdeducting FICA tax assessments from employee wages, and (c) tip theft (collectively, the "Claims").

4.   In general, Oregon and federal law prohibit certain deductions from employees' wages, require timely payment of minimum wage and overtime, and require that their final paychecks contain all earned and unpaid wages and be delivered by a statutory deadline, and limit the circumstances of when tips may be taken and to whom they may be distributed.

5.   MARINEPOLIS denies Plaintiff's allegations in their entirety.

6.   The Complaint and other contentions of the Class Representative and MARINEPOLIS raise complex legal and factual issues regarding the application of wage and hour and common laws, the various cases and regulations interpreting such laws, and regarding the viability of the Action against MARINEPOLIS, both individually and as a class claim. The Court has not yet ruled on the merits of the Class Representative's claims, nor has it ruled on whether the Action may proceed as a class or collective action.

7.   The trial of this matter would likely be lengthy and complex, adding to the cost and potential delay. All Parties recognize that the outcome of the litigation with respect to all the issues is uncertain. To avoid extensive, costly and uncertain litigation over these issues, the Parties have agreed to the proposed Settlement presently being considered by the Court.

8.   MARINEPOLIS has identified you, to the best of its knowledge, information and belief, as one of the individuals who are currently within the Class/Collective definition, *i.e.*, who received a paycheck for work performed at the Pearl District Sushiland in Oregon on or after December 13, 2016.

### The Proposed Settlement

9.   The following description of the proposed Settlement is only a summary. In the event of any difference between this summary and the terms of the Settlement, the terms of the Settlement shall control. You may secure a copy of the complete Settlement, the request for settlement approval, the motion for attorney's fees and supporting documentation, and other relevant case documents from Class Counsel at the address below. The terms of the Settlement relevant to the Class/Collective Members may be summarized as follows:

### Summary of Settlement Terms

10.  The Class/Collective shall be granted a gross settlement amount of $75,000.00 (the "Settlement Fund"). Each Class/Collective Member will received his or her portion of the Guaranteed Funds, and his or her portion of the FLSA Funds, if applicable, as discussed below. The Class Representative shall request $5,000 for his service in this matter in his capacity as such (the "Service Payment"). Class Counsel will request attorney fees in the amount of one-quarter (1/4) of the gross Settlement Fund. Class Counsel will also request $5,000 to cover costs to date and future costs required to administer this settlement. The Settlement shall not become effective if the Court does not approve it.

11.  If any Class Member opts out of this Settlement, these funds shall be deemed "Residual Funds." If any settlement fund disbursement is undeliverable, any such allocation shall also be deemed "Residual Funds." Residual Funds shall be donated to the Northwest Workers Justice Project as a cy pres distribution. No other residual funds will go to any of the parties in this case.

12.  Your share of the Guaranteed Fund will be a pro rata percentage of the Guaranteed Fund, based on the number of employees during the statute of limitations period; if you submit an opt-in for your share of the FLSA Funds, your share will be a pro rata percentage of the FLSA Funds, based on the number of tipped employees who submit an opt-in. In order to claim your share of the FLSA Funds, you must submit an opt-in (see section below on **How to Submit an Opt-In**).

### Class Counsel's Recommendation

13.  Class Counsel recommends the Settlement, believing that it is fair, reasonable and adequate to the Class.

### Class Counsel's Fees and Costs

14.  Under the proposed Settlement and subject to final Court approval, Class Counsel shall request attorney fees of one quarter (1/4) of the gross Settlement Fund, and $5,000 to cover costs already incurred in the case in addition to the costs of administering this settlement. You may object to the request of Class Counsel for attorney fees and costs by filing an objection within the time and in the manner specified below. If the Court approves an attorney fees or cost award of lower than that requested, it will not affect the viability of the Settlement.

### Release of Claims and Effect of Approval of Settlement Agreement

15.  Upon resolution of the Action by the Court, the Settlement will result in Class Members who do not timely opt out releasing any and all non-FLSA claims, counterclaims and/or causes of action against MARINEPOLIS and the Released Parties (as defined in the Settlement Agreement) of any kind or nature in any way related to the facts or claims that were alleged or that had an identical factual predicate to the claims alleged in the Action. It will also result in a release by the opt-in FLSA Collective Members of all FLSA claims, counterclaims and/or causes of action against MARINEPOLIS and the Released Parties (as defined in the Settlement Agreement) of any kind or nature in any way related to the facts or claims that were alleged or that had an identical factual predicate to the claims alleged in the Action. The Release of Claims is more fully explained in the Settlement Agreement.

**How to Submit an Opt-In**

16. You will receive your share of the Guaranteed Funds, whether or not you submit an opt-in. To receive your share of the FLSA Funds in addition to your share of the Guaranteed Funds, you will need to submit an opt-in. You may do so by mailing, emailing, or faxing the enclosed Opt-In Form to Class Counsel.

**How to Opt-out or Object**

17. If you believe that the proposed Settlement is unfair or inadequate or are dissatisfied with the share indicated in paragraph 12 above or feel that Class Counsel's request for attorney fees and expenses and/or the Service Payment should not be approved, you may object to the Settlement and/or Class Counsel's request for attorney fees and expenses and/or the Service Payment by mailing by first-class mail, a detailed written statement bearing the caption of this action shown above on the first page stating your comment or objection, to (a) Class Counsel (contact information below), and (b) the United States District Court for the District of Oregon, Mark O. Hatfield U.S. Courthouse, 1000 S.W. Third Ave., Portland, OR 97204. **Objections must be mailed so as to be received no later than \_\_\_, 2020, and must include the caption of the action and your name, address, and telephone number together with a detailed statement of the basis for your objection and whether you wish to be heard personally or by counsel at the final hearing at which the parties will be requesting binding Court approval of the Settlement and the award of attorney fees and expenses and the service payment, as described above.** If you object to the settlement, you may not opt out of the settlement and you will be bound by the Judge's rulings and orders.

19. You may also appear in person or by counsel at the final hearing described below.

20. If you choose not to be bound by this Settlement Agreement and do not wish to share in any of the benefits described herein, you may opt out of the Class by submitting a written, signed and dated statement of your wish to opt out (including the date, your name, and signature, as well as a statement stating "I wish to opt out of the *Coffey v. MARINEPOLIS* settlement.") by first-class mail, to Class Counsel (contact information below). The written, signed, and dated opt-out statement must be received no later than \_\_\_, 2020 (the "Opt-Out Deadline"). All requests for exclusion received after the Opt-Out Deadline will not be effective, and such person will be a member of the Class.

**Final Hearing to Approve Settlement and Award Attorney fees and Expenses and Service Payment**

21. The hearing for final consideration and approval of the Settlement and the award of attorney fees and expenses and to Class Counsel and service payment to the Class Representative is scheduled to take place on \_\_\_, 2020 at \_\_\_ .m. in Courtroom \_\_\_ of the United States District Court for the District of Oregon, 1000 SW Third Ave., Portland, OR 97204. That hearing may be changed or cancelled without further notice. If you wish to determine if the hearing is changed or the address shown herein.

**Class Counsel's Information**

22. All requests for more information, including a copy of the Settlement Agreement, should be sent to Class Counsel at:

<div align="center">

Jon M. Egan, PC
547 Fifth Street
Lake Oswego, OR 97034-3009
FAX (866) 311-5629
info@eganlegalteam.com

</div>

23. While the Court has approved the sending of this notice, that does not indicate, and is not intended to indicate, that the Court has any opinion as to the respective claims or defenses asserted by the parties in the Class Litigation.

**Please do not call the Court concerning this matter.**

**COFFEY V. MARINEPOLIS OPT-IN FORM**

BY COMPLETING AND SIGNING THIS FORM, I AM OPTING INTO THE FLSA COLLECTIVE ACTION PORTION OF THIS LAWSUIT.


NAME:_____

YEAR OF BIRTH: _____

LAST FOUR DIGITS OF SOCIAL SECURITY NUMBER:_____

SIGNATURE:_____


THIS FORM MUST BE SUBMITTED BY US MAIL, FAX, OR EMAIL BY _____, 2020.


**CLASS COUNSEL CONTACT INFORMATION**

JON M. EGAN, PC
547 Fifth Street
Lake Oswego, OR  97034-3009
Fax: (866) 311-5629
Email: info@eganlegalteam.com